Thank you, Chief Judge Richman, and may it please the Court. Three of this Court's sister circuits have held that the centuries-old legislative privilege prevents civil discovery into the subjective motivations of state legislators in performing their legislative acts. At least two others have held that such a legislator does not waive the privilege by consulting with a third party in the performance of such an act. And this Court has held that the Collateral Order Doctrine permits a governmental actor who is not a party to litigation to bring an immediate appeal about the misapplication of such an important governmental privilege. Your Honors should do the same. I'm going to start with the last point because it is jurisdictional. However, it shouldn't detain us long because even by the 1980s, it was already well-established law in this Court that a governmental actor who is not a party to litigation may bring an immediate appeal relating to governmental privileges. The plaintiffs and the United States point only to Mohawk, but in Mohawk, the United States Solicitor General advocated the position that the state is advocating here, that there should be a special rule for governmental privileges. In Footnote 4, the Supreme Court expressly stated it was not resolving that issue. Under this Court's rule of orderliness, in cases like Gahagan and in Gonzalez v. Thaler, a subsequent Supreme Court case must be unequivocal and irreconcilable with the existing case law. As the Eleventh Circuit held in Hubbard, Mohawk is not such a case, and therefore, the preexisting law is still good law. And as— The State's view is that Mohawk does not provide the standard for evaluating whether we have jurisdiction under the collateral order doctrine. Not for claims by third parties as this—of privilege for this—as this Court recognized in Whole Woman's Health v. Smith, and not specifically as to governmental privileges as the Eleventh Circuit recognized in Hubbard looking to this Court's previous case law. In terms of the collateral order doctrine for claims by parties for attorney-client privilege, it certainly does. But that's not what we are not—the legislators currently before the Court are not parties. They are not—and the claims of attorney-client privilege that they are asserting are those of a third party, which in Whole Woman's Health v. Smith, the—recognized the Supreme Court did not address in Mohawk. They are also intertwined with the claims of legislative privilege, and so, therefore, the Court would also have jurisdiction under pendant appellate jurisdiction as the Court recognized in Pickett, because that—due to waiver of interrelated issues, we would not have the ability to raise it after an appeal. How does—how does legislative privilege differ meaningfully from attorney-client privilege? In terms of the interest that it purports to protect. So for a number of different reasons, Your Honor. In Will v. Halleck, the Supreme Court looked at the different types of interests that would the—some of the same concerns about attorney-client privilege, but also state dignity. The—and that is implicated in governmental privilege when it is not for the attorney-client privilege. Moreover, as the—as the United States Supreme Court recognized in cases like Donson and Helstovsky, it is an important both separation of powers and independence of the legislature type of interest, and that is why, even though the subject—forgive me—the speech and the Constitution to Congress does not directly apply to the state legislators, it is applied as a matter of federal common law because we have that same legislative independence concern that does not exist in attorney-client privilege. Moreover, one of the reasons why the Supreme Court held in Mohawk that the attorney-client privilege does not have the same just—doesn't justify immediate review is because it is a well-understood privilege that is raised in a large number of cases. Neither of which is true in legislative privilege. Now, I know the Court has had three cases recently about legislative privilege. However, that's not normal. There are a lot of these cases that we see the briefs talking about, and I admit that they sometimes seem like they're passing light ships in the night, all derived from a single case from 2003. There is not a great deal of case law. There are not a great number of cases, and that distinguishes, as this Court recognized in Whole Woman's Health v. Smith, that this type of privilege, from the commonly asserted attorney-client privilege which you see in every piece of litigation. So Mohawk focused on what I call the class or category of the privilege, right? Yes, Your Honor. Would that include whether a third party or a party litigant is asserting the privilege? Yes, Your Honor. Under this Court's ruling in Leonard most recently, the class of claims for collateral order in that particular circumstance as a third party asserting a claim of undue burden. So the Court looked at two factors in determining the class, the type of person making the assertion and the type of claim. Here, that would be a third party, either in terms of the privilege, which is how I think would be best understood, both from Whole Woman's Health v. Smith and from Leonard, but if the Court didn't want to go that far, a governmental party, because as a number of courts have recognized, including, for example, the Second and even Al Vitti, which my opposing counsel points to in their jurisdictional discussions, recognizes that governmental actors don't have the same type of recourse in terms of the, or the same availability of just taking a contempt order and appealing from that. And that goes to United States v. Nixon, which recognized that it was unseemly, particularly in that context, for the President to be required to go into contempt of court in order to have a procedural vehicle on a governmental privilege. While they are certainly not the same requirements, it is certainly unseemly to require a state actor who is normally presumed to follow this Court's order to blatantly violate one in order to get a procedural. So you're saying it doesn't matter that they're not a party? If they were a state legislator and were a party, that it's the same? It would, it does matter that they are not a party. We are taking the position that it's third parties. Okay. What does that do to your argument about state dignity and separation of powers when they are a party? So those two concerns would apply, but the difference is the availability of an appeal. Because if the legislators were a party in a very unusual case, because, as I'll talk about in a few minutes, they have absolute civil immunity from litigation like this, that would be, that particular, if they were in fact a party, we would probably be up here on an absolute immunity claim of, which is a separate collateral order doctrine. But if, just as in terms of a privilege argument, because they would be a party, they would be able to appeal at final judgment, which is not the case in circumstances like this. Turning to that absolute privilege question, well... You don't get to a final judgment until after, I mean, that, the documents would be produced before then, so I don't understand how that makes a difference. So it's not a difference for that particular purpose, but the Supreme Court did recognize in Mohawk, and we do not dispute that here, that there is at least some, it may be an imperfect remedy, but there is at least some remedy for a party to seek new trial based on a, the production of privileged information or the reliance on privileged information. That is certainly not an adequate remedy in our view, however, it is a remedy, a remedy that's not available to my clients here. But turning to that absolute... Well, I mean, I know you want to turn to, I'm sorry. In Smith, obviously, footnote one noted that I was, quote, unconvinced, unquote. And admittedly, I'm still a little hung up on the jurisdictional point. But I know you want to turn to your other point, so... So, Your Honor, if you're still hung up on that particular point, I would point you to the fact that this court has jurisdiction to consider the questions of privilege on mandamus, even if we didn't formally request it, and I would suggest for the same reasons that Alvitti did in the Third Circuit, that you do so here, because there's a lot of confusion in this... So treat it alternatively, not as an interlocutory appeal, but as a mandamus petition? Yes, Your Honor. So I would respectfully suggest this is an appropriate case, because the district court clearly erred in holding, in departing from the... I'll ask for that. We don't... We don't say, well, we're going to deem this a mandamus petition, because you don't brief it, you don't cite the correct standard. We generally say that. Why would we make an exception in this case? So our view of the case law is that it has been established for years, and I understand Judge Willett was unconvinced, but he was in dissent in that case. And we don't... We didn't bring a mandamus action here for the same reason we wouldn't in front of example a qualified immunity appeal. At some point, the case law is sufficiently established that you don't have to bring it in the alternative. It's a... I don't think I was in dissent. I think I concurred in the judgment. I apologize. You were unconvinced. The majority of the court disagreed with you on that point, and so the rule in that case was that there was jurisdiction under the collateral order doctrine. But in this particular case, where the case law appeared to be pretty well-established and you concurred in the judgment despite disagreeing with the point, it would have been a burden on the court and the parties that was unjustified to bring a separate motion, petition for a writ of mandamus. So that is a circumstance where it would be appropriate, as Leonard recognized the court could, to exercise its jurisdiction, to exercise its discretion to consider this as a writ of mandamus. Here, the district court clearly erred in departing from the rule that was established in this court that the First Circuit, the Ninth Circuit, and the Eleventh Circuit have all held, which is that under Supreme Court precedent, the only exception to the legislative privilege is in criminal cases, and this is not a criminal case. And that comes from the fact, as I talked about a few minutes ago, that while the speech and debate clause does not apply directly to state court legislators, that the privilege comes from the same source with the same rationales. So therefore, under cases like Helstosky, they have the same basic outlines, unless there is an exception, because it is a common law privilege. The only exception that Gillick drew in 1980 was at criminal cases, and that's the words they used. We draw the line at civil cases. And under cases like Agostini v. Felton, the Supreme Court has reserved itself the right to move that line. It has not done so. So the line under the Supreme Court case law is criminal versus not. This is a civil case. It does not have the same federal interests involved. And to explain, to demonstrate why the court need look only further than Lee, where it discussed how a very similar claim to this involving intentional claims of racial discrimination, which it described as serious, were insufficient to overcome the legislative privilege by pointing to Arlington Heights, which Judge Jones's well-written dissent in Vesey also pointed out, courts have routinely applied the same test to refuse discovery into legislative under— She was in dissent. She was. However, this was not—the privilege was not in that issue. She was summarizing the case law, where applying on Arlington Heights, including in Lee, do not get over the legislative privilege, because as the Supreme Court recognized in that case, the—only in exceptional circumstances will legislators be ever even put on the stand, and even then that testimony would often be barred by privilege. This case, while we do not mean to diminish its significance in any way, is not extraordinary as compared to Arlington Heights or the cases that Judge Jones cited. So under those circumstances, merely alleging a racial discrimination claim by itself is not enough to overcome the privilege, nor is the fact that the court—I apologize—that the legislators consulted with third parties waive or vitiate the privilege in any way. And I started off by saying at least two courts of your sister circuits have held this, because it's a little hard to count noses, because some of the courts talk in terms of the extent of the privilege, and they look to cases that are involving the speech and debate clause for the same reason I mentioned before, which is that it's the same origin and the same purpose, so therefore the same general scope. So some—so Al Vitti, for example, talks about it as the lieutenant governor is—has the privilege himself, whereas cases like Almonte and Bruce talk about talking to third parties. So the privilege protects the legislative process. The legislative process to function under a modern system requires that the legislators be able to talk to people that aren't necessarily, shall we say, W-2 employees, and that it does not by itself vitiate the privilege as long as it is integral to the legislative act, and I believe that call—that's from Grable—in a legislative act is—we're not claiming and we have never claimed that all legislative—that all that legislators do are parts of legislative acts, but as the district court here described, all of the communications at issue were about the formulation, the consideration, and the discussion of a bill. That is the quintessential legislative act, and so therefore these would have fallen within the scope and the core of the legislative privilege under the cases that we've mentioned—I've mentioned today and that I've mentioned in my briefs. So under this court's sister case law—sister circuits, and under the Supreme Court case law, including, for example, Grable and Helstovsky—this would be core legislative privilege, and the district court was clearly erroneous to hold otherwise, and we would suggest acted in a usurpation of its role by vitiating an important governmental privilege on the part of a state actor. Unless the court has further questions, I will see you at rebuttal. Good morning, Your Honors, and may it please the Court, Christopher D. Dodge of Elias Law Group on behalf of the LULAC Plaintiffs Appellees. I'll be sharing duties today with Mr. Bakker. He'll be addressing in particular the federal interests at stake, and I will be attempting to address the remainder of the issues. The first issue here is jurisdiction, and it is well established in this circuit and indeed in every other circuit that discovery orders are not immediately appealable, including by non-parties. This Court made that clear just a couple months ago in Leonard v. Martin. Mohawk, in turn, makes clear that the mere assertion of privilege does not make a discovery order immediately appealable on final judgment, and its reasons are persuasive. The Court there explained that, quote, appellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings, by vacating an adverse judgment and remanding for a new trial. The Court also pointed to the various safety valves that exist to appellants who are aggrieved by what they consider to be a particularly injurious jurisdictional ruling. They can seek certified appeal, they can petition for mandamus, or they can go into contempt. And of course, the lawmakers forewent all of those options here. And finally, Mohawk noted that protective orders, of which a very strong one is in place here, can protect against the dissemination of ostensibly privileged material pending final judgment. All of Mohawk's reasoning applies with equal force here, and I didn't hear my friend on why those factors considered by the Supreme Court in Mohawk would not apply here. Indeed, my friend on the other side suggested that it was well established that the Collateral Order Doctrine would apply here, and yet both the First and Third Circuits in Al Vidi and Powell v. Ridge found just the opposite. They found that a claim of legislative privilege does not apply, does not permit immediate appeal. Likewise, the Second and Ninth Circuits have held that governmental privileges generally do not fall within the scope of the Collateral Order Doctrine. That's Newton v. NBC in the Ninth Circuit, and national super spuds in the Second Circuit. And— What do we do with Smith? Pardon? What do we do with Smith? Where I was unconvinced, but my two colleagues were convinced, and they proceeded. Well, several points, Your Honor. First, as this Court subsequently made clear in both Vantage Health and in Leonard, Smith did not turn on the non-party status of the appellants. Instead, it turned on the sue-i-generous nature of the issue there, which was a First Amendment constitutionally inflected privilege claim. And second, you know, Smith also concerned a higher order concern than what we have here. There is every reason to believe that the legislative privilege here is more akin to the attorney-client privilege at issue in Mohawk than the sue-i-generous First Amendment privilege at issue in Smith. It is a common law evidentiary privilege governed by the rules of evidence, contrary to what my friend on the other side said. There is, in fact, a significant and clear body of case law in the district courts within this circuit. So the district courts within the Fifth Circuit are well familiar with legislative privilege claims and how to apply them, as with attorney-client privilege. My friends on the other side point primarily to the legislative privilege's lengthy historical pedigree, which is perhaps fair enough, but the attorney-client privilege at issue in Mohawk shares at least as lengthy and distinguished a pedigree as a common law evidentiary privilege. So there is no real reason to believe that this issue rises to the level of Smith. With respect to sort of the idea that the government should not have to go into contempt, this Court itself in Branch long ago recognized that the Supreme Court's reasoning in Ryan rejected that precise idea. Ryan explained that for any recipient who is displeased with an order on a subpoena, the proper path is to go into contempt. And, you know, as Judge Friendly explained in the Superspud's case, it's not an idle gesture to require parties to go into contempt in order to seek appeal. With respect to the branch line of cases that my friend seems to place a great deal of reliance on, the lawmakers have made no effort here to try and reconcile the reasoning of those cases with the reasoning in Mohawk, and for a very good reason. The reasoning in those cases is flatly incompatible with Mohawk. Cases like Carr and Cate said that the privilege is, quote, irretrievably breached by disclosure if delayed until final judgment. But Mohawk says exactly the opposite. Mohawk says that the privilege is not, quote, irreparably destroyed absent immediate appeal, pointing to the availability of post-judgment review, pointing to the various appellate mechanisms that the legislators simply chose not to avail themselves of here, and the availability of a protective order, which, of course, is in place here. With respect to the belated request for mandamus, you know, mandamus poses a substantially higher burden than mere interlocutory appeal. And nothing in the briefing addresses meeting the mandamus standard. So that is not really a well-briefed issue for this Court. And even if it were, given what this Court has said in Jefferson, given the, you know, very uniform application of legislative privilege rules in the district courts, there's absolutely no reason to think here that Judge Rodriguez clearly erred or violated a well-established duty. Finally, final point on jurisdiction, Your Honor, if nothing else, there's no jurisdiction here to review the attorney-client privilege claims. That's precisely what Mohawk says. Pendent jurisdiction does not exist here because, as, again, Mohawk explained, such claims are, in fact, available for vindication after final judgment. Turning to the merits here, you know, in this circuit, legislative privilege is at best qualified and narrow. That's what this Court said in Jefferson. It's what it recently reaffirmed in LULAC v. Guillen. That rule is entirely consistent with the Supreme Court's instruction in Gillick that the legislative privilege for state legislators yields in federal courts where important federal interests are at stake. Now, my friend on the other side tried to put Gillick in a box by suggesting it only applies to criminal cases. No case has ever held that Gillick applies only in the criminal context, and, indeed, the plain text of the Gillick decision belies that suggestion. Gillick well could have confined its ruling to criminal cases, but it very clearly did not. Indeed, this Court's consideration of the legislative privilege has primarily occurred in the civil context. Jefferson, LULAC v. Guillen. You know, I think the lawmakers sort of retreat from some of their more grandiose claims about the privilege in their reply, and what they seem to make clear in the reply brief is that their real grievance here is with how Judge Rodriguez, after his in-camera review, seemed to weigh the relevance and need for this evidence in view of our allegation and our complaint that the Texas State Legislature acted with discriminatory intent in passing SB 1. You know, once we're getting into these sorts of issues of weighing relevance and need relative to the pleadings, that is an area of maximal deference to the State. Legislative bodies have a collective intent. Can that be ascribed kind of a omnibus intent? Well, I think Congress, in enacting Section 2, certainly suggested as much because, you know, a very well-established way, Your Honor, for proving a Section 2 claim is by demonstrating that the legislature acted with intent. Now, within proving that broader legislative intent to make a Section 2 claim, what Arlington Heights says is that there's a mix of different kinds of evidence that can be considered. Legislature has 181 members who may have 181 different reasons for voting the way they do. Fair enough, Your Honor. But again, our burden in pleading a Section 2 claim based on discriminatory intent is to demonstrate that the law was acted with legislative intent. And in making out that claim, as has been prescribed by Congress, we're certainly permitted inquiry into documents from these particular legislators who were identified in our complaint as key committee members, key drafters of the bill, key leaders in pushing the bill forward. You know, I think it's very curious that the lawmakers seem to essentially penalize us for only seeking discovery from four legislators. They suggest that, you know, evidence of these key legislators' intent can't possibly bear on the broader question of legislative intent. But taking that argument seriously for a moment, in the lawmakers' view, our claim to overcome the legislative privilege would have been stronger if we had subpoenaed all 181 legislators and had sought broader document discovery. But that, of course, runs into what Gillick says about the committee considerations at stake in the legislative privilege. We tried to take those committee considerations seriously. We moved to compel on fewer than a third of the documents withheld by the lawmakers, focusing on those that seemed most acutely relevant to our claims and most likely to, you know, reveal discoverable information that would allow us to build a case in chief ahead of a court. Let me jump in. This may give you some whiplash, and I'm sorry to jump back to jurisdiction, forgive me. So Texas has their rule of orderliness argument, and as you read Mohawk, did the Supreme Court reserve the third-party privilege argument in Mohawk? So the footnote that my friend alluded to specifically dealt with an argument raised by the government concerning constitutionally-rooted privileges rooted in constitutional separation of powers. That is not the privilege at issue here today. We are dealing, by the lawmakers' own admission, with a common law evidentiary privilege governed by the federal rules of evidence. So I don't think that footnote is really applicable here. Even if it was not, we still have not heard from the lawmakers any way to distinguish Mohawk's treatment of the attorney-client privilege, which I do think is very similar to the legislative privilege as a common law concept, to distinguish that reasoning. And so with respect to the orderliness rule, there are many Fifth Circuit cases saying that it is the duty of a panel to declare case law no longer good law when its reasoning has been implicitly or explicitly undermined by a decision of the Supreme Court. In the Branch case, Your Honor, the panel there made clear back in 1980 it was already ready to do away with that governmental privilege rule because it recognized that it was incompatible with the Supreme Court's decision in Ryan. The only reason it didn't is that in an unwritten opinion, an earlier motions panel had denied a motion to dismiss. And so the Branch court said it was bound by that. But it in great detail laid out how that line of cases was no longer tenable in view of Ryan. That was before Mohawk. And certainly after Mohawk, that line of cases is no longer tenable. Back to the mayors. The lawmakers here have waived privilege, legislative privilege, for their communications with Lieutenant Governor. And I'm hung up on that. The Lieutenant Governor has various legislative duties. You don't dispute that, correct? We don't.  Your Honor, no case within this circuit has ever extended the legislative privilege to an executive officer. And while I'm well aware that the Texas Lieutenant Governor has certain unique legislative duties, he is also a Senate officer. He's not just an executive officer. He's a Senate officer. Well, you know, Judge Rodriguez offered an olive branch to the lawmakers on this point and said, okay, point me to which of his duties enumerated under the Constitution or the Senate rules that he was performing when engaged in these communications. They could not do it. They could not do it because, as Judge Rodriguez explained, the communications with the Lieutenant Governor were no different than the lawmakers' communications with a constituent discussing the merits of legislation. So, you know, he found after his in-camera review that they had failed to meet their burden of showing that these communications occurred within the context of an enumerated duty. I see I'm running out of time, so if— I thought he had a lot more authority than that. I mean, can't he direct money out of the budget to specific places? He may well, Your Honor. I'm not sure. I don't consider myself an expert parliamentarian on Texas Senate rules. That said, it was the lawmakers' burden to establish the privilege. They could not point to any of his duties. They pointed to a new duty on appeal, never raised before below the trial court, about his ability to access the floor of the Senate. And so Judge Rodriguez then looked at each individual document and said, you know what? None of these communications have to do with any of the Lieutenant Governor's duties, whatever they may be. I see I'm out of time. I'm glad to address any other additional questions. Thank you for your time. Good morning, and may it please the Court, Jonathan Backer for the United States. As an initial matter, I'd like to reiterate that this Court lacks jurisdiction to hear this appeal of an interlocutory discovery order. If, however, this Court reaches the merits, it should firmly reject the legislators' expansive view of the state legislative privilege. Their conception of the privilege would bar plaintiffs from obtaining crucial evidence of legislative intent, even in cases like this one, where proof of the legislature's discriminatory purpose is the very essence of the case. Although the United States did not join LULAC's discovery requests in this case, it routinely seeks and obtains such discovery in its cases challenging discriminatory voting laws. Moreover, the United States relies heavily on private plaintiffs like LULAC to assist with the enforcement of Section 2 and other federal statutes that prohibit laws enacted with discriminatory intent. In short, the legislators' extraordinary view of the legislative privilege, if accepted by this Court, would jeopardize enforcement of federal civil rights. Your Honors, I'd like to begin with focusing in on what I think is the key language in Gillick which should guide this Court. Gillick said that the privilege, the legislative privilege yields where important federal interests are at stake. I think at stake is critical language. My friend on the other side mentioned federal interests being involved. That's not the standard that Gillick says. It says at stake, meaning that adherence to or application of the legislative privilege would frustrate those key federal interests. And so the United States is not saying that the privilege yields whenever there's a federal question. The United States isn't even saying that the privilege yields whenever there is a claim of discrimination. The United States is saying that at a minimum, the District Court did not abuse its discretion by holding the privilege yields in a case that turns on application of the Arlington Heights factors, a discriminatory intent case, where the very essence of the claim is what was the legislature's intent. In that context, proof of what motivated the legislators and the legislature as a whole is crucial, crucial evidence to make out the Arlington Heights factors. I mean, Arlington Heights itself says that contemporaneous statements by legislatures is highly relevant to assessing the totality of the circumstances in that context. So if plaintiffs in Section 2 cases or other cases where discriminatory intent to the legislature is squarely at issue were unable to obtain this sort of discovery, they'd essentially be making out the entire soup of the Arlington Heights factors with one arm tied behind their back. That can't be the case, because remember, this is Congress's statute. Congress said that Section 2 is available to root out intentionally discriminatory acts of legislatures, and the standard that Arlington Heights sets for that requires looking into the intent of the legislators, and this evidence is crucial for that. And playing this out, district courts in this circuit and elsewhere, there are numerous cases holding that the privilege yields in this particular context, in the voting rights context. Within the circuit, there's the three-judge court that is hearing the challenge to Texas's 2021 redistricting plan that just recently held that the privilege is waived in this context. Same with D.C. a few years back. But even outside of this district, the circuit, you have cases like Benesik, another three-judge court that held that the privilege yields, or Bethune Hill in the Eastern District of Virginia, or South Carolina State Conference of the NAACP, or Page v. Virginia State Board of Elections. The list goes on and on. There are numerous cases holding that this specific context is exactly when the privilege should yield. So, at a minimum, the district court did not abuse its discretion by holding that it yields in this context. As my colleague pointed out, there are a number of—this was no fishing expedition that LULAC was engaging in. This was a narrowly tailored request specific at the documents that were most representative of legislative intent based on the privilege log. Judge Rodriguez reviewed these documents in camera and concluded that they were highly relevant to determining legislative intent, and there's a protective order in place to ensure that these documents, even if they're disclosed for the purpose of discovery to the litigants, don't go out to the public at large. And that's another key point. It's important to remember that this is about discovery. It's not an ultimate determination of whether this sort of evidence is admissible, as it was in the context of a case like Bernovich or even Arlington Heights. This is just about whether plaintiffs are able to get the discovery that they need to make a full-throated case that the Arlington Heights factors are met. So it's absolutely essential, again, that in a case like this one, where the essence of the claim is what was the legislator's intent, what was the legislature's intent, that plaintiffs be able to get this sort of discovery. And it makes no difference that this is a private plaintiff here as opposed to the United States. Judge Gonzales, he did impose this five-factor test that is not all that difficult to meet. The court in Arlington Heights left the door open to discovery from legislators in equal protection cases, but only if the plaintiffs showed there were exceptional circumstances. And so how can you reconcile the Arlington Heights exceptional circumstances standard with the one the district court applied? So Your Honor, there aren't that many types of claims where the essence of the claim is what is the legislature's intent. It's really limited to discriminatory intent claims. I'm not saying that there aren't other cases that might arise to that extraordinary level, but the universe that I'm talking about that's relevant in this case is quite limited. But in addition, the Rodriguez factors, I think, provide a higher burden than Your Honor suggested. And you can look to cases, to a case like Citizens Union in the Southern District of New York that agreed with many of all the premises that the United States set forth in its briefing and here argument today in terms of the scope of the privilege, but said that in a First Amendment context where legislative intent really isn't at issue because of O'Brien, the privilege doesn't yield. So there are examples of application of the Rodriguez factors where the privilege doesn't ultimately yield. So I would look to that case for guidance. With that, Your Honor, I'll conclude, Your Honors, I'd conclude by asking that this court dismiss this case for lack of jurisdiction or, in the alternative, affirm the district court's well-reasoned opinion. Thank you, Your Honors, and just three quick points. The first goes to what the plaintiff said in implying about what this court said in Jefferson and that it's well-established in this case or in this court that the privilege is at best qualified. As we've explained in our reply brief, we do not dispute that. The question is about the type of qualification. And as the Third Circuit recognized in Wray Grand Jury at page 948 of that opinion, the qualification in Gillick was, and I quote, not based on a general balancing of competing interests that may differ from case to case. Instead, it was on a class-by-class basis, and as the Supreme Court said in its opinion on page 361, we've drawn the line at civil cases.  You see it in the secrecy for grand juries, as the Supreme Court recognized in Nixon, and as it held in Nixon, that's the line for presidential privileges as well. Turning to my second point, which goes to the question my friend from the United States had just gone on about how this type of evidence is core to this type of claim. He was a little inconsistent in his arguments in that he said he was not saying that it was core to racial discrimination only when the intent was core to the claim. But intent is always core to a racial discrimination claim. The Supreme Court's held that in a number of cases. It was also core to a First Amendment retaliation claim in Hubbard. So in both Hubbard and Lee, your sister circuits held that the privilege did not give way in that context based on this sort of amorphous balancing test that they are providing here. And to show that this type of evidence isn't that core, again, I will point this court to Vesey, which my friend cited. The court splintered on a number of different issues, but everybody agreed there was not a single scrap of evidence, direct evidence, of racial discrimination by the legislators, not even a stray comment, as I believe how Judge Jones described it. So the type of evidence they're seeking here is extremely intrusive. It goes into the questions of separation of powers and of comedy and of federalism, but it's not even crucial to proving the claim. And that would be entirely inconsistent with the type of qualification which was very similar between Gillick and Nixon, where I would point this court to In Re Sealed Case, where the court looked at that type of qualification and it started off with the question, is it a criminal case? Okay, it's a criminal case. So what type of, is the evidence just relevance then? And still no. The court required a specific type of evidence within the subpoenaed documents to have important evidence, which this is not for the reasons I just described, and that there be no other way of getting it, which the plaintiffs have not shown here. They've simply suggested that it's unlikely to be able to find elsewhere. And finally is their assertion that their claim would have been stronger if they had sought wider discovery. Not at all. Their claim would have been, had the exact same problems, namely that it is an invasion of the legislative independence that is protected by this privilege, and it may, they don't have the same sort of extrapolation problem, but that's not what goes to the privilege and the privilege rules that are being drawn for that purpose. And the purpose of the privilege could not be protected, and the privilege standard could not be met based on just how many people a subpoena, somebody might be subpoenaing two years later. That's just not how the analysis goes. That's not what Gillick said. Again, the case You didn't cite Gillick in either of your briefs, did you? Gillick? Yes, we did, Your Honor. United States against Gillick. Maybe I missed it. Okay. So we certainly did. That, and Alviti, Hubbard, and the, Alviti, Hubbard, and Lee were all looking at Gillick, and Gillick is the source of this case law, In re Grand Jury as well. So the, and Lee, and just pausing on Lee before I run out of time, that case I think really shows the problems with the plaintiff's arguments and the United States' arguments here. The exact same considerations from a federal interest perspective and the exact same considerations from a privileged perspective were at issue, and the Ninth Circuit held because, as Judge Willett pointed out, that the, that in Arlington Heights, only in extraordinary cases will the legislator be on the stand, and even then, there would still be the privileged barring much of the testimony. This is an important case, but it's not extraordinary as compared to all other Arlington Heights cases. So as a result, unless this court is going to say that simply pleading in Arlington Heights claim is enough to overcome the legislative privilege, which my colleagues on the other side seem to suggest they're not even arguing, there, there is no basis to distinguish this case from Lee or any of the others. Quick, quick Gillick question. Can you cite a case that is interpreted, Gillick is holding, that the only context in which legislative privilege for a state lawmaker may be overcome is in a federal criminal proceeding? So the First Circuit and the Eleventh Circuit both did particularly reserve that question. That's why Lee is so important, because Lee, there's, this court doesn't even have to go so far. We think the best reading of Gillick is to say only in criminal cases, but if the court is uncomfortable going that far, Lee would say it's not in this case, because it has  So the courts have left open some wiggle room, but the wiggle room is not capacious enough to reach this type of claim. For those reasons, we respectfully request you reverse. Thank you. That will conclude the arguments before this panel today. We will resume at 9 o'clock in the morning. Thank you.